**The below described is SIGNED.**

Dated: February 03, 2012

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>WATERFORD FUNDING, LLC, *et al.*,<br><br>Debtor. | Bankruptcy Number: 09-22584<br>(Substantively Consolidated)<br><br>Chapter 11 |
| Gil A. Miller, Chapter 11 Trustee for Waterford Funding, LLC, *et al.*,<br><br>Plaintiff.<br>v.<br><br>Daniel Quentin Humphrey, an individual,<br><br>Defendant. | Judge R. Kimball Mosier<br><br><br>Adversary Proceeding No. 10-02889 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The matter before the Court is the *Trustee's Motion for Summary Judgment* [Adv. Docket No. 9] (Motion) filed by Plaintiff Gil A. Miller, the Chapter 11 trustee (the Trustee) for Waterford Funding, LLC, Waterford Loan Fund, LLC, Waterford Services, LLC, Waterford Candwich, LLC, Waterford Perdido, LLC, and Investment Recovery, L.C. (collectively, Waterford or the Debtors). A hearing on the Motion was originally held on September 1,

2011, which hearing the Court continued until October 3, 2011. Cameron M. Hancock and Peggy Hunt of Dorsey and Whitney LLP appeared on behalf of the Plaintiff. Defendant Daniel Quentin Humphrey (Humphrey) appeared *pro se*.

The Court has reviewed the Trustee's Motion and Memorandum in Support of Trustee's Motion for Summary Judgment (Trustee's Memorandum) [Adv. Docket No. 10], the Defendant's Response to Trustee's Motion for Summary Judgment (Humphrey Response) [Adv. Docket No. 21], the Plaintiff's Reply [Adv. Docket No. 22], as well as all other relevant documents and pleadings on file with the Court in this adversary proceeding and the Debtors' bankruptcy case, the arguments made in conjunction with the Motion, the exhibits received, and applicable law. Based thereon, the Court hereby finds that the Trustee is entitled to judgment in his favor on his Second, Third, Fourth, Fifth, Sixth, and Eighth Claims for Relief, as requested in the Motion.

Pursuant to Federal Rule of Bankruptcy Procedure 7052 and this Court's Local Rules, the Court now enters the following Findings of Fact and Conclusions of Law.

Jurisdiction

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

Procedural Background

The Trustee filed his complaint against Humphrey on October 8, 2010 [Adv. Docket No. 1] (Complaint). In the Complaint, the Trustee asserts 13 claims for relief principally seeking to

avoid and recover prepetition transfers from the Debtors to Humphrey. Humphrey, who has acted pro se during this entire case, filed an answer to the Complaint on November 8, 2010.

The Trustee filed his Motion and the Trustee's Memorandum on June 30, 2011. The declaration of Gil A. Miller was attached to and incorporated into the Trustee's Memorandum. The Trustee's Motion seeks summary judgment in favor of the Trustee on his Second through Sixth and Eighth Claims for Relief.

Humphrey filed his response to the Motion on September 16, 2011. Because Humphrey is a pro se litigant, the Court will view the Humphrey Response as a sworn declaration in response to the Trustee's statements of facts.

In the Humphrey Response, Humphrey does not respond to or controvert statements of fact nos. 1-17 in the Trustee's Memorandum. Accordingly, those statements are hereby deemed undisputed and admitted under Fed. R. Bankr. P. 7056(e) and Local Rule 7056-1(b).

In his response Humphrey admits statements of fact nos. 18-25, 27, and 34-39 in the Trustee's Memorandum.

Humphrey disputes statements of fact nos. 28-31, 33 and 40. The Court finds that statements of fact nos. 28-31, 33, and 40 in the Trustee's Memorandum are not material issues of fact for purposes of the Trustee's Motion.

The Trustee's affidavit and declarations of the Trustee's accountant established the Debtors' insolvency at the time of the transfers, and insolvency has not been disputed. The Trustee, in his affidavit, also asserts that the Debtors did not receive reasonably equivalent value in exchange for the transfers.

The only material issues of fact that Mr. Humphrey disputes are paragraphs 26 and 32 of the Trustee's Memorandum which relate to the value received by Waterford in exchange for the commissions that were paid to Mr. Humphrey. In his response, Mr. Humphrey has alleged that Waterford did receive value in exchange for the transfers.

At the hearing on this matter, the Court received Hearing Exhibits 1, 2, 3 and 4. Each of the exhibits is a "Placement Agent Agreement" signed by Travis Wright on behalf of Waterford Loan Fund, LLC and by Mr. Humphrey on behalf of himself.

Findings of Fact

1. On March 20, 2009 (Petition Date), Waterford Loan Fund and Waterford Funding filed voluntary petitions in this Court under Chapter 11 of the Bankruptcy Code, designated as Case No. 09-22583 and Case No. 09-22584, respectively.

2. On January 6, 2010, the Trustee was appointed by the Court as the Chapter 11 Trustee for the Debtors' Loan Fund and Waterford Funding.

3. The Debtors have been substantively consolidated as of the Petition Date.

4. In September 1999, Wright organized a Utah limited liability company called Wrightway Investments, LLC, and in 2001, Wright changed the name of Wrightway Investments, LLC to Waterford Funding.

5. From at least September 1999 until the Petition Date, Wright operated Waterford as a business that has the characteristics of an illegal "Ponzi scheme."

6. Under this scheme, Wright raised funds from "investors" through a single enterprise, which he typically referred to as "Waterford."

4

7. Investors invested funds with Waterford based on the promise that Waterford would repay their principal plus interest pursuant to issued promissory notes that provided for rates of return ranging from approximately 8% to 44%, with certain effective default rates over 300%.

8. Waterford used monies received from its new investors to pay debts owed to previous investors.

9. Investors placed funds with Waterford based on the promise that their funds would be deposited in a common fund and then loaned out on commercial real estate projects at no more than a 50% loan to value ratio.

10. A private placement memorandum (PPM) that was created for Waterford also referred to the placement of investor funds in a secured fund, but no such fund was ever created or existed

11. Waterford was insolvent during all times relevant to this proceeding.

12. Humphrey was educated and only fell a few religion classes short of obtaining a degree from Brigham Young University.

13. Prior to the Petition Date, Humphrey had at least 16 years of experience in the investment advisory industry.

14. Prior to 2000 when he began soliciting investors for Waterford, Humphrey worked for Mutual of New York and AXA Financial where he sold investments and insurance.

15. In connection with his selling of investments at Mutual of New York, Humphrey obtained Series 6, Series 63, and Series 65 investment licenses.

16.     While working for Mutual of New York and AXA Financial, Humphrey averaged approximately a 5% commission for the sale of various investment and insurance products, which resulted in Humphrey earning approximately $200,000–$300,000 per year.

17.     Additionally, while working for Mutual of New York and AXA Financial, Humphrey would assist his clients in filling out paperwork and getting their money transferred into the appropriate investment accounts.

18.     In approximately the summer of 1999, Humphrey met Wright and discussed the possibility of soliciting Waterford investors.

19.     Humphrey also spoke with Eric Pearson, Waterford's attorney (Pearson), about certain aspects of the PPM which Pearson had prepared for potential investors.

20.     Finally, Humphrey spoke generally with individuals he knew in Connecticut unrelated to Waterford about Wright's investment strategy.

21.     Other than the individuals listed in the preceding paragraphs, Humphrey did not speak with anyone else about Waterford prior to soliciting investors for Waterford.

22.     Prior to soliciting investors for Waterford, the only Waterford documents that Humphrey reviewed were the PPM and a one-page narrative description of the kind of investments Waterford offered. Humphrey did not review any actual loan documents allegedly securing Waterford investments prior to soliciting investors for Waterford.

23.     In approximately 2000, Humphrey began to actively solicit new Waterford investors.

24. A significant percentage of Waterford investors were located on the East Coast (the East Coast Investors), and most of these East Coast Investors were brought to Waterford by Humphrey who resided in Connecticut at all times relevant hereto.

25. Humphrey entered into four (4) Placement Agent Agreements with Waterford Loan Fund, LLC dated November 15, 2001 (Hearing Exhibit 1), January 6, 2003 (Hearing Exhibit 2), October 6, 2005 (Hearing Exhibit 3) and March 14, 2008 (Hearing Exhibit 4).

26. Pursuant to the Placement Agent Agreements, Humphrey was to receive an 8% commission for capital he solicited for Waterford, with an additional 2% commission if the capital stayed with Waterford for a certain period of time (the Commissions).

27. Humphrey received payments of approximately $525,000 in 2007 and payments of approximately $635,000 in 2008 from Waterford.

28. Wright told Humphrey "not to worry" about repaying the payments.

29. Wright caused Waterford to pay Humphrey the payments because Waterford relied on East Coast Investors and, as a result, he wanted to keep Humphrey happy.

30. From November 2001 through the Petition Date, Waterford transferred approximately $3,971,270.10 to Humphrey.

31. Within four years prior to the Petition Date, Waterford transferred $1,675,000.00 to Humphrey (4-Year Transfers or Fraudulent Transfers).

32. Humphrey received $1,205,000 Of the Fraudulent Transfers, within two years prior to the Petition Date (the 2-Year Transfers).

33. Each of the Fraudulent Transfers was a transfer of an interest of the Debtors in property.

Conclusions of Law

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational finder of fact could find in favor of the nonmoving party on the evidence presented. The burden of showing that no genuine issue of material fact exists is borne by the moving party. Where the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by showing there is an absence of evidence in the nonmovant's case on an essential element of the nonmovant's claim. In considering a motion for summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. *Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136 (10th Cir. 2008).

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant at trial on the claim or defense under consideration. *Belva Ann Nahno-Lopez v Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010), *Johnson v. City of Lindon*, 405 F.3d 1065 (10th Cir. 2005), *Libertarian Party of New Mexico v. Herrera*, 506 F.3d 1303 (10th Cir. 2007). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to that party's case in order

8

to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, (1985). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Mere conclusory allegations are insufficient to establish an issue of fact under Rule 56. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Barber ex rel. Barber v. State of Colorado Dept. Of Revenue*, 562 F.3d 1222 (10th Cir. 2009). The defenses of ordinary course of business and reasonably equivalent value are defenses for which Humphrey must carry the burden.[1]

The Trustee has supported his motion for summary judgment with the Trustee's uncontroverted declaration that the transfers to Humphrey were outside the ordinary course of business and were not made in exchange for reasonably equivalent value. Humphrey has only asserted a conclusory allegation that the transfers were made for value. Humphrey offered no evidence to support his argument that the transfers were made in exchange for reasonably equivalent value or made pursuant to the Placement Agent Agreements. Even if the Placement Agent Agreements could, as a matter of law, be used to establish that the transfers were to a contracted broker and that Waterford received reasonably equivalent value[2], the transfers were

---

[1] The defendant in an avoiding action has the burden of proving that transfers were made in the ordinary course of business. *In re Meridith Hoffman Partners*, 12 F.3d 1549 (10th Cir. 1993). To succeed in arguing "reasonable equivalent value in exchange," the defendant must show that debtor received value and that the value was reasonably equivalent to the value of the transfer. *In re Hedged-Investments Associates, Inc.*, 84 F.3d 1286 (10th Cir. 1996).

[2] "The Tenth Circuit has not yet ruled on this issue and it appears that there is a split between courts on how to apply the fraudulent transfer analysis to broker transferees who take money from a Ponzi scheme operation." *Wing v. Dockstader*, 2:08 cv 776, 2010 WL 5020959, at *6 (D. Utah Dec. 3, 2010) (citations omitted).

not made pursuant to the Placement Agent Agreements. Section 9 of the Placement Agent Agreements, Hearing Exhibits 1, 2, 3 and 4, provides that Mr. Humphrey was to receive fees and expenses at each closing in an applicable percentage, which reflects a set commission based on the percentage of the gross investment. New investments received higher commissions. Reinvestments received lower commissions. But what is clear from the Placement Agent Agreements is that the commissions were to be paid at the time of closing based on the applicable percentage rate. The transfers Mr. Humphrey received from Waterford, although allegedly made pursuant to the Placement Agent Agreements, have no apparent relation to the Placement Agent Agreements. Mr. Humphrey has not identified any investments or reinvestments that enable the Court to determine any commission amounts, let alone commission amounts consistent with the Placement Agent Agreements. In fact, the pattern of transfers received by Humphrey is similar to the pattern that one would expect to find for a promoter or a principal of a Ponzi scheme. The Court therefore concludes that the Placement Agent Agreements do not establish that the transfers were made to Humphrey for value in exchange for his services.

  Humphrey argues that in return for the transfers received by him, he provided value by soliciting investors to pour millions of dollars of investment money into Waterford. Humphrey's argument must fail because of the very nature of a Ponzi scheme and the consequences of his actions. The operation of a Ponzi scheme is based entirely upon the solicitation of new investor funds in order to pay earlier investors. As defined by the Tenth Circuit Court of Appeals,

> [a] **Ponzi** Scheme is "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even

> larger investments. Money from the new investors is used directly
> to repay or pay interest to earlier investors, usually without any
> operation or revenue-producing activity other than the continual
> raising of new funds." *Black's Law Dictionary* 1189 (8th ed.
> 2004).

*Mosier v. Callister*, 546 F.3d 1271, N 2 (10th Cir. 2008). By soliciting and bringing in new investors, Humphrey provided no value to Waterford; he simply contributed to Waterford's downward spiral into deepening insolvency. Humphrey was a beneficiary of the Ponzi scheme who suffered no damages in his capacity as a placement agent. Without the active recruitment of new investors to the Ponzi scheme by Humphrey and others, the total amount of investor dollars lost and the total number of victims would have both been significantly less. These actions do not provide value and Humphrey should not benefit for his efforts to keep the Ponzi scheme afloat. *Wing v. Dockstader* at *6 (explaining that a person who refers investors to a Ponzi scheme, whether knowingly or not, is just as involved, and even more involved, in furthering the scheme as a passive investor). Because every transfer received by Humphrey was money that came from the Ponzi scheme victims, this Court also rejects Humphrey's defense on public policy grounds. Allowing Humphry to retain his ill-gotten profits which came directly from the pockets of the Ponzi scheme's victims, would be to further the Debtors' fraudulent scheme. *In re Hedged-Investments Associates, Inc.*, 380 F.3d 1292 at N 3 (10th Cir. 2004).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

11

Mr. Humphrey has failed to offer any proof or identify specific facts to make a showing that value was given in exchange for the Fraudulent Transfers or that the transfers were made in the ordinary course of business. Because Mr. Humphrey has failed to designate specific facts to make a showing sufficient to establish the existence of an element essential to his case, the Court finds that there is no dispute or genuine issue regarding any material fact and that the Trustee is entitled to judgment as a matter of law on his Second, Third, Fourth, Fifth, Sixth, and Eighth Claims for Relief.

The 2-Year Transfers are fraudulent transfers that should be avoided under 11 U.S.C. § 548(a)(1)(A) and the Trustee is entitled to summary judgment in his favor on his Second Claim for Relief avoiding the 2-Year Transfers in the amount of $1,205,000.

The 2-Year Transfers are fraudulent transfers that should be avoided under 11 U.S.C. § 548(a)(1)(B) and the Trustee is entitled to summary judgment in his favor on his Third Claim for Relief avoiding the 2-Year Transfers in the amount of $1,205,000.

The Fraudulent Transfers may be avoided under 11 U.S.C. § 544(b) and Utah Code Ann. § 25-6-5(1)(a) and the Trustee is entitled to summary judgment in his favor on his Fourth Claim for Relief avoiding the 4-Year Transfers in the amount of $1,675,000.

The Fraudulent Transfers may be avoided under 11 U.S.C. § 544(b) and Utah Code Ann. § 25-6-5(1)(b) and the Trustee is entitled to summary judgment in his favor on his Fifth Claim for Relief avoiding the 4-Year Transfers in the amount of $1,675,000.

The Fraudulent Transfers may be avoided under 11 U.S.C. § 544(b) and Utah Code Ann. § 25-6-6(1) and the Trustee is entitled to summary judgment in his favor on his Sixth Claim for Relief avoiding the 4-Year Transfers in the amount of $1,675,000.

ORDER SIGNED

The 4-Year Transfers and 2-Year Transfers are fraudulent transfers that the Trustee is entitled to recover under 11 U.S.C. §§ 550 and 551 for the benefit of the Debtors' estate, and the Trustee is entitled to summary judgment in the amount of $1,675,000 on his Eighth Claim for Relief.

Because the 2-Year Transfers in the amount of $1,205,000 are included within the 4-Year Transfers in the amount of $1,675,000, the total amount of the judgment should be limited to $1,675,000.

-------------------------------------------END OF DOCUMENT-------------------------------------------

_____ooo0ooo_____

## SERVICE LIST

      Service of the foregoing **Findings of Fact and Conclusions of Law** will be effected through the Bankruptcy Noticing Center to the following parties.

Peggy Hunt
Cameron M. Hancock
Scott A. Cummings
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685

Daniel Quentin Humphrey
108 Bordeaux Lane
Alpine, UT 84004

Daniel Quentin Humphrey
217 Deerfield Drive
Alpine, UT 84004

Office of the United States Trustee
Ken Garff Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111